In the Matter of the Arbitration between FRESH MEADOWS MEDICAL ASSOCIATES, as Assignee of JANINA TOKARZ, Respondent, and LIBERTY MUTUAL INSURANCE COMPANY, Appellant.

Second Department, December 29, 1978

**APPEARANCES OF COUNSEL**

*A. Paul Goldblum* for appellant.

*Mardon R. Israel* for respondent.

**OPINION OF THE COURT**

Suozzi, J.

There are two issues to be decided in this case: (1) whether a claimant's attorney may collect from a no-fault carrier for the time spent in justifying the reasonableness of his fee; and (2) under what circumstances may a claimant's attorney recover attorney's fees which exceed the underlying claim.

The facts are not in material dispute. The arbitration proceeding which underlies the instant application arose as a result of an automobile accident which occurred on December 21, 1974. On that date, Janina Tokarz was a passenger in an automobile being driven by one Edward Adams, who was insured by the appellant insurer. Mrs. Tokarz was injured as a result of the accident.

On June 5, 1975 the insurer scheduled a physical examination of Mrs. Tokarz with a doctor of its choosing. Mrs. Tokarz failed to appear for this physical examination and a week later, i.e., on June 13, 1975, Mrs. Tokarz incurred a $70 bill for X rays taken by a member doctor of the claimant, Fresh Meadows Medical Associates. On June 17, 1975 the insurer was notified that the $70 X-ray bill had been assigned from Mrs. Tokarz to the claimant. On June 18, 1975 the insurer declined to pay the bill due to the claimant's assignor's (i.e., Mrs. Tokarz) failure to have submitted to the June 5, 1975 physical examination.

On December 1, 1976 an arbitrator of the American Arbitration Association ruled that the insurer was not required to reimburse Mrs. Tokarz because of her refusal to submit to a physical examination. When the claimant later presented its $70 bill to the insurer, it declined to pay it in reliance upon the ruling of the arbitrator. The claimant then submitted the bill to a second arbitrator on July 13, 1977. In addition to seeking payment of the $70 X-ray bill, the claimant's attorney submitted at the arbitration hearing a memorandum of law and facts wherein an attorney's fee of $1,650 was also requested. At the hearing, the arbitrator directed the insurer to submit a memorandum and gave the claimant's attorney time to submit a reply memorandum.

The claimant's attorney, in his reply, requested a legal fee of $2,850 broken down as follows: (1) $1,650 for 11 hours of legal work at the rate of $150 per hour prior to and including the July 13, 1977 arbitration hearing; and (2) $1,200 based on

eight hours of legal work at the rate of $150 per hour in preparing the reply memorandum.

With respect to the $1,200 which was sought for preparation of the reply memorandum requested by the arbitrator, the Special Term found, and this finding has not been challenged by either party to the appeal, that the arbitrator requested the reply memorandum from the claimant's attorney so that the latter could explain and justify the attorney's fees which were initially requested.

It appears from the record that after the July 13, 1977 hearing before the arbitrator, the insurer, at the arbitrator's suggestion, attempted to settle the matter and offered to pay the $70 plus an attorney's fee of $300, but the claimant's attorney would not accept a fee of less than four figures.

The arbitrator ruled in favor of the claimant. He held that the decision of the first arbitrator was not binding upon him due to the insurer's failure to give notice to the assignee or the assignee's attorney. The arbitrator directed the insurer to pay to the claimant no-fault benefits in the sum of $70 and also to pay the claimant's attorney the sum of $2,850 "as and for a reasonable attorney's fee."

The insurer then unsuccessfully moved at Special Term to vacate the award of counsel fees on the ground that it was excessive, unreasonable, irrational and in violation of public policy, and this appeal ensued.

With respect to claimant's attorney's request for the additional $1,200 in legal fees, the statute applicable to the case at bar was subdivision 1 of section 675 of the Insurance Law as it read prior to its amendment (see L 1977, ch 892, § 13, eff Dec. 1, 1977). That statute provided that the successful no-fault claimant "shall also be entitled to recover his attorney's reasonable fee if a valid claim or portion thereof was overdue and such claim was not paid before the attorney was retained."

The appropriate regulation, 11 NYCRR 65.6 (h) (1), provides that the reasonable attorney's fee under the no-fault law is based upon "the reasonable value of the legal work performed in obtaining the recovery."

■ ■ The meaning and thrust of these two provisions are clear. Recovery of attorney's fees incurred in establishing the victim's right to benefits is allowed by the statute, but not recovery of the cost of establishing those fees. A litigant has

no inherent right to have his attorney's fees paid by his opponent and such fees are not recoverable as damages or costs, except if specifically provided by contract or statute (City of Buffalo v Clement Co., 28 NY2d 241, 263; Citibank [N. Y. State] N. A. v Galor Constr. Co., 60 AD2d 677). In view of the express language of the Insurance Law and the appropriate regulation promulgated pursuant thereto, it is clear that to the extent that counsel fees in the amount of $1,200 were awarded herein to compensate the claimant's attorney for the time spent in justifying his fee for proving the validity of the underlying claim, it was improper and was subject to a motion to vacate under CPLR 7511 (subd [b], par 1, cl [iii]), which provides for vacatur when: "an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made".

The claimant's attorney attempts to justify the additional award by arguing that the no-fault law was enacted as consumer legislation and that the language "his attorney's reasonable fee" must be construed as meaning the total fee for the attorney's services, even for time spent in justifying the fee. We disagree.

Although the no-fault law was enacted to "reduce the long delays in the payment of claims experienced under judicial procedures and to lessen the burden on our State courts and judicial resources" (Montgomery v Daniels, 38 NY2d 41, 55-56), that rationale for the statute's enactment is totally irrelevant to the argument proposed by the claimant's attorney. It was never the purpose of the no-fault law that insurance companies be placed in a position whereby they would be compelled to acquiesce to any claim for attorney's fees no matter how exorbitant and unreasonable. Yet, this is precisely the result that would follow if the argument of the claimant's attorney was accepted. The insurer's conceded right to contest the reasonableness of an attorney's fee before the arbitrator would surely be an illusory one if, by doing so, the claimant's attorney would be given the opportunity, under the guise of justifying his original demand, to generate even more fees to be paid by the insurer.

Accordingly, the judgment should be reversed insofar as appealed from, by reducing the amount of the counsel fee from $2,850 to $1,650.

The insurer, in its brief, states that it "strongly believes"

that the award of $1,650 to prosecute the claim was excessive, but it has waived any objection thereto on the ground that "argument of that issue has been foreclosed" by the decisions in *Matter of Country-Wide Ins. Co. (Barrios)* (54 AD2d 879, affd 43 NY2d 685) and *Matter of Simmons (Government Employees Ins. Co.)* (59 AD2d 468).[1]

It is true that both *Barrios (supra)* and *Simmons (supra)* ostensibly stand for the proposition that an arbitrator's award of counsel fees which exceeds an underlying no-fault claim, will not be disturbed by the courts except in the case of " 'complete irrationality' " *(Lentine v Fundaro,* 29 NY2d 328, 383).

Since the insurer has waived any argument in its brief regarding the $1,650 counsel fee, we need not determine at this point whether the holding of *Barrios* and *Simmons* should be limited to their particular facts or be expanded to permit routine judicial approval without any inquiry into the conduct of the insured or injured party, of all arbitrator's awards of counsel fees under the statute as it existed prior to December 1, 1977[2] which are excessive in relation to the underlying claim. We, therefore, leave to the future a resolution of the issue as to whether the no-fault statute was designed to enable an insured to arbitrarily refuse to submit to reasonable requests of the insurer which would lead to an expeditious resolution of the claim, and thereafter recover from the insurer all of the attorney's fees incurred or generated by that conduct in pursuance of the underlying claim.

LATHAM, J. P., DAMIANI and TITONE, JJ., concur.

Judgment of the Supreme Court, Queens County, dated March 3, 1978, reversed insofar as appealed from, on the law, with $50 costs and disbursements, the counsel fee awarded by

1. Despite the insurer's concession on appeal that the $1,650 was compensation to the attorney for securing recovery of the $70 for his client, it appears from the record that even as to the $1,650, a part thereof was meant as compensation to the attorney for time expended in justifying his fee. It was alleged in the insurer's affidavit in support of the motion to vacate, and not disputed, that one half of the claimant's attorney's main brief submitted to the arbitrator on July 13, 1977 (the preparation of which was included in the original 11 hours of work claimed by the attorney) was devoted to a discussion of attorney's fees.

2. Effective December 1, 1977 (L 1977, ch 892), subdivision 1 of section 675 of the Insurance Law was amended to provide that "the claimant shall also be entitled to recover his attorney's reasonable fee, which shall be subject to limitations promulgated by the superintendent in regulations" (see, also, 11 NYCRR Part 68).

the arbitrator is reduced to $1,650 and the proceeding is remanded to Special Term for entry of an appropriate amended judgment.