■ LAMBERTUS R. P. SCHOONHEIM, Appellant, v MARTINA SCHOONHEIM, Respondent. — Order (in form of the transcript of the proceedings, marked "So Ordered"), Supreme Court, New York County (Gabel, J.), dated July 28, 1982, directing visitation and requiring plaintiff husband to post a $25,000 bond, is modified, on the law and the facts, and in the exercise of discretion, to the extent of striking the direction that if the husband fails to appear with his daughter at the mother's residence as directed by the court that the bond be forfeited and his attorneys be directed to turn "it" (the bond or collateral) over to the mother or her attorney on five days' written notice of the default, and the order is otherwise affirmed, without costs. Under the circumstances which confronted Special Term, we find that the court properly directed the posting of a bond to condition compliance with the order directing a nine-day period of visitation by the daughter with her mother, from August 16 through August 24, 1982. In light of the several prior actions by the husband father, in continuing flagrant and deliberate disregard of court orders as to the visitation rights of the wife mother, we conclude that Special Term did exercise its discretion properly by requiring that a bond be posted by him to ensure the appearance of the child in accordance with the direction of the court. The record reflects several prior applications to enforce the visitation rights of the mother, which were rendered necessary because of plaintiff's arrogant defiance of court orders. The posting of a bond, under the circumstances of this case, was warranted. However, we are in agreement that the forfeiture aspect of the bond, as directed by Special Term, was an improvident exercise of discretion and, accordingly, we strike so much of the order as directed a forfeiture thereof upon plaintiff's failure to comply. We disagree with Justice Silverman, who concludes that the imposition of a bond conflicted with the statutory scheme to punish for contempt. To the contrary, the posting of a bond in marital actions to safeguard and ensure custody and visitation rights has

been approved in this court and in others. In *Meltzer v Meltzer* (54 AD2d 633), we reduced from $25,000 to $10,000 the bond to be posted under a modified decree, after finding that a bond was necessary to ensure the return of the child following visitation with the mother. (See, also, *Matter of Reinhart v Reinhart,* 33 Misc 2d 80, 82.) In *Lyritzis v Lyritzis* (55 AD2d 946), the Appellate Division, Second Department, deleted from the order awarding custody and fixing visitation rights, a direction that the father post a performance bond as a condition to removal of the son from the United States during visitation, concluding only that such a direction was unwarranted on the record there. A bond may be directed in a proper case in conjunction with the disposition by the court on the issue of custody and visitation. Such a direction, where appropriate, may be made in conformity with the judicial obligation imposed by subdivision 1 of section 240 of the Domestic Relations Law, which provides that "the court must give such direction, between the parties, for the custody, care, education and maintenance of any child of the parties, as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child." Under the circumstances here, faced with plaintiff's clear record of ignoring judicial mandates, Special Term properly ordered a bond to preserve the visitation rights of the mother, in accordance with the judgment of divorce and consistent with the court's responsibility under the statute. To conclude otherwise would permit the father to enjoy the benefits of the divorce decree which conferred upon him custody of the daughter, while at the same time, frustrating the visitation rights of the mother (cf. *Sipos v Sipos,* 73 AD2d 1055, where the court conditioned the obligation of continued support upon the mother's compliance with the decreed visitation rights of the father). As to the question of the purpose of the bond and what is to be encompassed thereunder, it is intended to be security for nonperformance by the party posting the undertaking and, upon the occurrence of such nonperformance, then the court may determine the scope of the contempt, fine or damages to be paid therefrom. We disagree with Justice Silverman's conclusion that such a bond must be in the nature of a *quid pro quo*. The court may direct that it be posted to act as a form of guarantee of performance, as it determines, in accordance with the clear mandate of subdivision 1 of section 240 of the Domestic Relations Law. Finally, we note that respondent's brief violates established appellate procedures in that it contains a number of pages of purported statements of fact with no record references, and as to which appellant states that these purported facts are not in the record at all. However, as these non-record-supported statements have not played a part in our decision, we see no useful purpose to be served at this stage by directing the striking of these portions of the brief. Concur — Kupferman, J. P., Carro, Fein and Kassal, JJ.

Silverman, J., dissents in part in a memorandum as follows: I would strike the provision for the bond *in toto*. In this matrimonial case a judgment of divorce was rendered in favor of the husband on June 15, 1979; but there has been a continual stream of disputes and litigation as to custody and other ancillary matters. There are two children of the marriage, a son and a daughter. The daughter resides with the husband and the son resides with the wife. The wife made an application for a nine-day visitation with both children. The order to show cause contained a temporary restraining order restraining the plaintiff husband from removing the daughter from the State of New York. At a hearing on the matter on July 27, 1982 the court was informed that the husband had apparently taken the daughter to Holland where they then were. The court directed the plaintiff husband to present his daughter at the wife's residence for visitation from August 16 through August

24, 1982, and further directed that plaintiff husband post a bond in the sum of $25,000 with his attorneys to assure their appearances and that he have until August 5, 1982 to post that bond; and that in the event he fails to appear with his daughter at the mother's residence as directed by the court, that the bond be forfeited. (No formal order was entered on this direction but the court signed a notation of "So Ordered" on a stenographic transcript of the proceedings.) The present appeal is from this "So Ordered." We are informed that the husband did not appear with his daughter for the ordered visitation and has not furnished the bond. I think the provision for the bond was erroneous for these reasons: (a) The court directed that if the husband failed to appear with the child on August 16, 1982, the bond should be forfeited, i.e., in effect that he would have to pay $25,000. The husband's default with respect to the visitation was at most a contempt of court. But there is a statutory scheme with respect to contempts, which regulates the kind and manner of service of orders punishable by contempt, the procedure for such punishment and the penalties therefor. (CPLR 5104; Judiciary Law, art 19.) In particular, the punishment for contempt requires formal notice, an opportunity to be heard, and usually recognizes as an excuse lack of willfulness and even formal or substantial defects in the order claimed to be violated. Finally and most important, the amount of the fine payable to the party aggrieved cannot exceed an amount sufficient to indemnify the aggrieved party for actual loss or injury or $250 plus costs and expenses. (Judiciary Law, § 773.) The order appealed from plainly disregards all these provisions regulating both the procedure and substance of punishment for contempt. It amounts to a determination in advance of any contempt that for such contempt the contumacious party shall pay $25,000 to the other side whether or not the other side's actual damage comes anywhere near that, or exceeds it, and without any provision for formal due process. (b) Nor should we or Special Term now attempt to fix some other kind of bond to assure the visitation in August, 1982. As that visitation has not taken place, any other bond now to be directed retroactively to assure that visitation would in essence be a direction to pay the amount of the bond absolutely. It would seem to me that if the court should direct such a bond, the only reasonable direction would be to pay the wife her actual damages or $250, etc., i.e., precisely what the contempt statute directs. But if that be so, why direct a bond to pay an amount equal to the contempt liability? Why not simply refer the parties to their remedy by contempt? Conceivably there may be some deficiencies, as a result of which the husband may not be liable for contempt. If that be so, the husband is entitled to those defenses. (c) Bonds or undertakings are usually directed only as a condition of granting some benefit to the party directed to put up a bond, e.g., granting that party or denying to the opposite party a provisional remedy, or permitting the party to serve as an administrator or fiduciary, etc., or perhaps even as a condition to continue custody of a child. Thus the party permitted to post the bond has a consensual choice to make; either he posts the bond or he does not get whatever he wants the court to give him. But here the bond was not directed as a condition of giving anything to the husband. This point is further illustrated by consideration of what the remedy would be if the court unconditionally ordered the husband to post a bond and he did not do so (as here he has not). He could not then be held liable on the bond which he did not furnish. The remedy would be contempt; and we are back to square one. A bond is a consensual instrument, a contract. A direction by a court to a party to consent to something is almost a paradox. If the court can direct a party to consent to pay a sum of money absolutely, even if the party does not wish to do so, why should the court simply not direct him to pay the money instead of going through the charade of ordering him to consent

to pay the money? Indeed in the present case, the wife's brief requests exactly this relief, a judgment for $25,000 without bothering with the bond. Perhaps I should add, no party has raised any issue as to the form of the "order" appealed from. (Cf. CPLR 2219, 2220.)